297 Ga. 468
FINAL COPY

S14G1876. VININGS BANK v. BRASFIELD & GORRIE, LLC.

MELTON, Justice.

In Vinings Bank v. Brasfield & Gorrie, LLC, 328 Ga. App. 636 (759 SE2d 886) (2014), the Court of Appeals affirmed, among other rulings, the trial court's determination that Vinings Bank ("Bank") was not entitled to summary judgment with regard to a counterclaim for conversion brought against the Bank by Brasfield & Gorrie, LLC ("B&G"). We granted certiorari to determine the propriety of this decision. For the reasons set forth below, we affirm in part and reverse in part.

As summarized below,

[t]his case arises from a defaulted $1.4 million business loan that [the Bank] made to Wagener Enterprises, Inc. ("WEI"). As partial collateral for the $1.4 million loan, WEI granted the Bank a security interest in all of its accounts and accounts receivable, including WEI's contract to provide drywall services work for general contractor [B&G] on multiple construction projects. After WEI defaulted on the loan, the Bank filed suit against B&G, seeking to collect on WEI's accounts receivable and alleging conversion. B&G filed a counterclaim for conversion, and the parties subsequently filed cross-motions for summary judgment. The Bank appeal[ed to the Court of Appeals], contending that the trial court erred in (1) denying its motion for summary judgment in its action to recover

money from B&G, and in granting partial summary judgment to B&G; (2) denying its motion for summary judgment on its conversion claim; and (3) denying its motion for summary judgment on B&G's counterclaim for conversion.

Id. at 636. After considering the case, the Court of Appeals affirmed the trial court on all counts, and we granted certiorari narrowly to determine whether the Court of Appeals erred in Division 3 of its opinion when it held that the trial court correctly denied summary judgment to the Bank on B&G's counterclaim for conversion.

With specific regard to the facts underlying B&G's counterclaim, the record shows that WEI opened and maintained a general deposit account with the Bank.[1] As WEI finished work on construction projects for B&G, WEI sent B&G an invoice which covered WEI's fees and the fees of subcontractors employed by WEI. After receiving an invoice, B&G would deposit the invoiced amount into WEI's deposit account, and WEI would subsequently disburse the appropriate amounts to its subcontractors. It is undisputed that WEI's account was not a trust account. Following WEI's default on its loan, the Bank froze WEI's general deposit account for approximately four weeks. During this time,

---

[1] WEI is not a party to this action.

2

B&G sent the Bank a letter, notifying it that it had been making construction payments into WEI's account and that some of the funds in the account *might* be due to subcontractors of WEI. B&G did not convey the names of any potential subcontractors or any amounts that might be owed to them. At the end of the four-week period, the Bank applied the funds held in WEI's account to WEI's loan indebtedness, and, in order to satisfy or avoid the imposition of materialmen's liens on its construction projects, B&G paid all of WEI's subcontractors individually.[2] Then, as part of the ensuing law suit, B&G counterclaimed that the Bank had converted funds from WEI's account, arguing that, pursuant to OCGA § 16-8-15,[3] any amounts due to WEI's subcontractors

---

[2] As a result, B&G argues that it has, in effect, paid twice for the services of WEI's subcontractors.

[3] This statute provides:

> (a) Any architect, landscape architect, engineer, contractor, subcontractor, or other person who with intent to defraud shall use the proceeds of any payment made to him on account of improving certain real property for any other purpose than to pay for labor or service performed on or materials furnished by his order for this specific improvement while any amount for which he may be or become liable for such labor, services, or materials remains unpaid commits a felony and, upon conviction thereof, shall be punished by imprisonment for not less than one year nor more than five years or upon the recommendation of the jury or in the discretion of the trial judge, punished for a misdemeanor, provided that, in addition

3

were held in a constructive trust for their benefit. The trial court denied the Bank's motion for summary judgment on this counterclaim, finding that issues of fact remained regarding the extent to which any subcontractors had been paid and whether any invoices remained. The Court of Appeals affirmed.

In doing so, the Court of Appeals did not consider whether B&G had any right to assert a counterclaim against the Bank for conversion of funds due to WEI's subcontractors. It is undisputed that B&G had no direct relationship with the Bank, B&G was not, itself, a subcontractor of WEI entitled to any of WEI's funds, B&G did not have direct contractual relationships with any of WEI's subcontractors, and B&G had no fiduciary relationship with any of WEI's subcontractors. Furthermore, there is no evidence that WEI or WEI's affected

to the above sanctions, where a corporation's agent acts within the scope of his office or employment and on behalf of the corporation and with intent to defraud uses such proceeds for purposes other than for property improvements or where a corporation's board of directors or managerial official, the latter acting within the scope of his employment and on behalf of the corporation recklessly tolerates or, with intent to defraud, authorizes, requests, or commands the use of such proceeds for purposes other than for property improvements, the corporation commits a felony and, upon conviction thereof, shall be punished by a fine of not less than $1,000.00 nor more than $5,000.00.

. . .

subcontractors have assigned B&G any of their rights. Therefore, even if we assume without deciding that funds in WEI's account were held in a constructive trust for the benefit of WEI's *subcontractors*, B&G is not the party to assert those rights and had no standing to do so. See, e.g., Bishop Contracting Co. v. North Ga. Equip. Co., 203 Ga. App. 655 (4) (417 SE2d 400) (1992) (corporation that did not own property lacked standing to assert slander of title claim against lienholder). The fact that B&G voluntarily paid WEI's subcontractors individually to avoid the imposition of liens does not change this result. There has been no assignment of claims against WEI or the Bank between B & G and WEI's subcontractors, and B&G's right to reimbursement, if any, lies against WEI as the defaulting party.

Judgment affirmed in part and reversed in part. Thompson, C. J., Benham, Hunstein, Nahmias, Blackwell, JJ., and Judge James F. Bass, Jr., concur. Hines, P. J., not participating.

Decided July 6, 2015

Certiorari to the Court of Appeals of Georgia – 328 Ga. App. 636.

Bailey Davis, C. Lee Davis, Emma L. Burke, for appellant.

DLA Piper, Robert L. Crewdson, for appellee.

James Bates Brannon Groover, William J. Sheppard, Michael N. White, amici curiae.